# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-11035

United States Court of Appeals
Fifth Circuit

**FILED**

June 10, 2015

Lyle W. Cayce
Clerk

EDDIE WOOTEN,

Plaintiff–Appellee,

v.

MCDONALD TRANSIT ASSOCIATES, INCORPORATED,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, WIENER, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Treating the petition for rehearing en banc as a petition for panel rehearing, *see* Internal Operating Procedure accompanying 5th CIR. R. 35, the petition for panel rehearing is GRANTED.

We previously issued an opinion assessing whether evidence adduced at a default-judgment "prove-up" hearing can cure a facially deficient complaint, a question this Court left open forty years ago in *Nishimatsu Construction Co. v. Houston National Bank*, 515 F.2d 1200 (5th Cir. 1975).[1] *See Wooten v. McDonald Transit Assocs., Inc.*, 775 F.3d 689 (5th Cir. 2015). Upon reconsideration, we withdraw the prior opinion in its entirety and replace it with the following.

---

[1] *See id.* at 1206 n.5 ("We do not consider here the possibility that otherwise fatal defects in the pleadings might be corrected by proof taken by the court at a hearing.").

No. 13-11035

Plaintiff–Appellee Eddie Wooten filed suit against his former employer, Defendant–Appellant McDonald Transit Associates, Inc., under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, alleging discrimination and retaliation. McDonald Transit never answered or defended the suit. The clerk entered default against McDonald Transit, and, after holding a damages hearing in which Wooten provided live testimony, the district court entered default judgment for Wooten. McDonald Transit filed a motion to set aside the default judgment, which the district court denied. Although Wooten's complaint contained very few factual allegations, we conclude that it met the low threshold of content demanded by Federal Rule of Civil Procedure 8 because it provided McDonald Transit with fair notice of Wooten's claims. The complaint was therefore sufficient, both on its own and in combination with the evidence presented at the prove-up hearing, to support the default judgment. Additionally, we see no clear error in the district court's finding that McDonald Transit's default was willful, justifying the denial of relief under Rules 55(c) and 60(b). As there was no abuse of discretion in either the district court's entry of default judgment or its refusal to set aside that judgment, we affirm.

## I. BACKGROUND

On June 22, 2012, Wooten sued McDonald Transit in federal court, alleging discrimination on the basis of his age and retaliation after he made a claim of age discrimination. In his complaint, Wooten alleged that he was a former employee of McDonald Transit, where he had worked from 1999 until May 1, 2011. At the time he was fired, he worked as a Class B Mechanic. He further alleged:

> In October 2010, [Wooten] made a claim to the Equal Employment Opportunity Commission for age discrimination. After the claim was made and continuing until [his] employment

ended, [McDonald Transit], in violation of the ADEA, discriminated and retaliated against [Wooten], and created a hostile work environment, until such time that Plaintiff was constructively discharged on or about May 1, 2011.

The district clerk issued a summons the same day that Wooten filed his complaint. On July 18, 2012, Wooten returned the summons with an affidavit of service indicating that service had been executed on July 5 on McDonald Transit's president and registered agent, Robert T. Babbitt, by certified mail, return receipt requested. But the return receipt indicated that process had in fact been served on Brenda Roden, another McDonald Transit officer. After McDonald Transit failed to appear, plead, or otherwise defend Wooten's suit, the district clerk entered default against McDonald Transit on October 30, 2012, and Wooten moved for a default judgment.

The district court held a hearing on the motion in December 2012, but took issue with the fact that Roden, not Babbitt, had been served. The court adjourned the hearing so that Wooten could attempt proper service on Babbitt again. The district clerk issued new summons, and Wooten returned with a new affidavit of service indicating service had been executed by personal delivery on Babbitt on January 17, 2013. Again McDonald Transit failed to appear, answer, or defend; again the district clerk entered default; and again Wooten moved for a default judgment.

The district court held a hearing on whether to enter default judgment on June 7. At that hearing, which the court expressly designated "a hearing to prove up damages for a default judgment," Wooten provided testimony that elaborated on his factual allegations. He testified that he was born in January 1956, making him fifty-four years old at the time he made his claim to the EEOC. He explained that during his tenure at McDonald Transit, he had been promoted from the position of Class B Mechanic to the position of

No. 13-11035

Shop Foreman, and he had "never" been "wr[itten] up" or "reprimanded."  He also described his retaliation claim in greater detail: he was demoted from Shop Foreman, lowering his pay by $2 an hour; he was given menial work; his hours were changed; and he was denied opportunities for additional job-related certification.   This treatment, he said, persisted for "about six months."  The district court entered a default judgment that same day.

McDonald Transit filed a motion to set aside the default judgment on June 18.  In an affidavit accompanying the motion, Babbitt averred that he was never served with process, that he had not learned of the suit naming McDonald Transit as a defendant until June 11, and that he retained counsel to challenge the default judgment soon afterward.

McDonald Transit challenged the judgment on numerous grounds under Federal Rules of Civil Procedure 55(c) and 60(b).  In particular, McDonald Transit invoked Rule 60(b)(1) (mistake, inadvertence, surprise, or excusable neglect); (b)(3) (fraud, misrepresentation, or misconduct by an opposing party); (b)(4) (the judgment is void); and (b)(6) (any other reason that justifies relief).  In asking the court to set aside the default judgment under Rule 60(b)(1), McDonald Transit claimed that it was not Wooten's employer; that Wooten had failed to obtain a right-to-sue letter before suing McDonald Transit; and that Wooten had failed to file suit within the required time from the issuance of a right-to-sue letter.  McDonald Transit also asserted that it was not properly served and therefore had not willfully disregarded its duty to respond.  In response, Wooten argued that McDonald Transit had failed to offer any explanation for its default, failed to produce sufficient evidence of a meritorious defense, and relied on Babbitt's uncorroborated and self-serving statements.

4

No. 13-11035

The district court denied McDonald Transit's motion to set aside the default judgment. Based on evidence of service of process to Babbitt and Roden (who the court had learned was a vice president of McDonald Transit), the court inferred that McDonald Transit had knowingly and intentionally failed to answer or otherwise defend against the complaint. The court further rejected McDonald Transit's claim to raise meritorious defenses on the grounds that the "record is far from conclusive" and these defenses were effectively waived by failing to answer the complaint.

McDonald Transit timely appealed both the default judgment and the order denying its motion to set aside the default judgment.

## II. JURISDICTION AND STANDARD OF REVIEW

Wooten sued McDonald Transit for violations of federal law under the ADEA; accordingly, the district court had subject-matter jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

We review the entry of a default judgment for abuse of discretion. *U.S. for the Use of M–CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1013 (5th Cir. 1987). Rule 55(c) provides that a district court "may set aside an entry of default for good cause" and "may set aside a default judgment under Rule 60(b)." Correspondingly, we also review the district court's refusal to set aside a default judgment for abuse of discretion. *Lacy v. Sitel Corp.*, 227 F.3d 290, 291–92 (5th Cir. 2000); *Shipco*, 814 F.2d at 1013. "Any factual determinations underlying that decision," including a finding of willful default, "are reviewed for clear error." *Lacy*, 227 F.3d at 292; *see Dierschke v. O'Cheskey* (*In re Dierschke*), 975 F.2d 181, 184 (5th Cir. 1992).

Yet, we undertake this review with a grain of salt. "Because of the seriousness of a default judgment, and although the standard of review is abuse of discretion, even a slight abuse of discretion may justify reversal." *In*

*re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (quoting *Lacy*, 227 F.3d at 292).  Review of a default judgment puts competing policy interests at play.  On one hand, "[w]e have adopted a policy in favor of resolving cases on their merits and against the use of default judgments."  *Id.*  On the other, this policy is "counterbalanced by considerations of social goals, justice and expediency, a weighing process that lies largely within the domain of the trial judge's discretion."  *Id.* (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999)) (alterations and internal quotation marks omitted).

## III.  DISCUSSION

On appeal, McDonald Transit raises two principal issues: (1) whether the district court erred in entering a default judgment and (2) whether the district court erred in denying McDonald Transit's motion to set aside the judgment.

### A.    The Entry of the Default Judgment

"A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true."  *Nishimatsu*, 515 F.2d at 1206 (citing *Thomson v. Wooster*, 114 U.S. 104, 113 (1885)).  Put another way, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *Id.*  "On appeal, the defendant, although he may not challenge the sufficiency of the evidence, is entitled to contest the sufficiency of the complaint and its allegations to support the judgment."  *Id.*  In addition, a court "may conduct hearings . . . when, to enter or effectuate judgment," it needs to, *inter alia*, "establish the truth of any allegation by evidence . . . or . . . investigate any other matter."  Fed. R. Civ. P. 55(b)(2)(C); *see also* 10A Charles A. Wright et al., *Federal Practice & Procedure* § 2688 (3d ed. 1998) ("[W]hen it seems advantageous, a court may conduct a

hearing to determine whether to enter a judgment by default. . . . [T]he court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

Neither party disputes that entry of default was appropriate. The parties disagree about (1) the ADEA standard that governs Wooten's claim; (2) the sufficiency of Wooten's allegations; and (3) whether the district court can consider evidence presented at the hearing in addition to the allegations in supporting default judgment.

### 1.    *The ADEA Framework*

McDonald Transit contends that Wooten's complaint insufficiently alleged the essential elements of his prima facie retaliation claim under the ADEA—in particular, membership in a protected class and qualification.

The ADEA makes it unlawful "for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). To establish a prima facie retaliation claim under the ADEA, a plaintiff "must show (1) that he engaged in a protected activity, (2) that there was an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action." *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001). *Holtzclaw* unequivocally added a fourth element to the claim—a plaintiff who sought re-employment under the ADEA must prove as a part of his prima facie case that he was qualified for his position. *Id.*[2]

---

[2] The *Holtzclaw* court reasoned that because qualification for the job is a requirement to make a prima facie *discrimination* claim under the ADEA, and because "[r]etaliation claims are nothing more than a protection against discrimination," "it would be illogical not to require one here." 255 F.3d at 259. *Burlington Northern & Santa Fe Railway Co. v. White*,

No. 13-11035

Contrary to McDonald Transit's position, neither § 623(d) nor *Holtzclaw* requires that Wooten prove he was a member of a class protected by the ADEA discrimination provisions. *Compare* 29 U.S.C. § 631 (defining class of individuals covered by age-discrimination provisions), *with id.* § 623(d) (permitting retaliation provision to apply to "any" employee). Therefore, the only elements that Wooten must sufficiently allege are (1) protected activity, (2) adverse employment action, (3) causal link, and (4) qualification.

---

548 U.S. 53 (2006), casts doubt on this reasoning. In that Title VII retaliation case, the Court examined the relationship between that statute's discrimination and retaliation provisions. *See id.* at 61–67. The *Burlington* Court found that the provisions featured different language and responded to different purposes—namely, "[t]he substantive [discrimination] provision seeks to prevent injury to individuals based on who they are, *i.e.,* their status[, whereas t]he antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.,* their conduct." *Id.* at 63. It therefore concluded that the discrimination and retaliation provisions were not "coterminous" and "reject[ed] the standards applied in the Courts of Appeals that have treated the antiretaliation provision as forbidding the same conduct prohibited by the antidiscrimination provision." *Id.* at 67. Nevertheless, because *Burlington* addressed Title VII rather than the ADEA, it did not "unequivocally overrule" *Holtzclaw*, and we remain bound to apply that case. *See Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) (internal quotation marks omitted); *cf. United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999) ("[T]his panel is bound by the precedent of previous panels absent an intervening Supreme Court case *explicitly or implicitly* overruling that prior precedent . . . ." (emphasis added)).

We observe that our Court has not consistently required plaintiffs to prove qualification under *Holtzclaw* after *Burlington*. *See, e.g., Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014) (per curiam) (citing *Holtzclaw* for the elements of a prima facie case of retaliation under the ADEA but omitting the qualification element); *Pree v. Farmers Ins. Exch.*, 552 F. App'x 385, 388 (5th Cir. 2014) (per curiam) (same); *Miller v. Metro Ford Auto. Sales, Inc.*, 519 F. App'x 850, 851–52 (5th Cir. 2013) (per curiam) (same). Moreover, even before *Burlington*, a panel of our Court "decline[d] to extend the *Holtzclaw* requirements" to a case involving wrongful discharge, though that case was before us on appeal from judgment as a matter of law and there "ha[d] been no determination that [the plaintiff] . . . was not qualified." *EEOC v. Dunbar Diagnostic Servs. Inc.*, 92 F. App'x 83, 84–85 (5th Cir. 2004) (per curiam). We need not decide whether *Holtzclaw* remains viable, however, because—as explained below—we hold that Wooten's complaint satisfies the minimal pleading requirements of Rule 8 regardless of whether "qualification" is a necessary element of his prima facie case.

No. 13-11035

### 2.    *The Sufficiency of the Pleadings to Support the Judgment*

We begin by determining whether Wooten's complaint, either standing alone or considered together with his testimony at the hearing, supplied an adequate foundation for the default judgment.  We conclude that Wooten's complaint, although admittedly light on factual details, advanced a colorable claim for relief and provided McDonald Transit with the requisite notice to satisfy Rules 8 and 55.  Given that the complaint itself met the minimum standards of Rule 8, we decide that the testimony at the prove-up hearing served the limited purpose of "establish[ing] the truth of [the] allegation[s] by evidence," Fed. R. Civ. P. 55(b)(2)(C), and therefore may be considered in assessing the entry of default judgment without implicating the *Nishimatsu* quandary, *see* 515 F.2d at 1206 n.5.

Despite announcing that a default judgment must be "supported by well-pleaded allegations" and must have "a sufficient basis in the pleadings," the *Nishimatsu* court did not elaborate on these requirements.  *See id.* at 1206.  Nothing in the record or the parties' briefs discusses how to determine what is "well-pleaded" or "sufficient," and we have found no guidance in our own cases.  Nevertheless, we draw meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint.

Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (footnote and citations

9

omitted).  "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3]

Wooten's complaint contains the following factual allegations: (1) Wooten is a former employee of McDonald Transit; (2) Wooten was employed by McDonald Transit from 1999 until May 1, 2011; (3) at the time he was fired, Wooten was a Class B mechanic earning $19.50 per hour, plus benefits; (4) in October 2010, Wooten filed an age-discrimination claim with the EEOC, after which McDonald Transit "discriminated and retaliated against [Wooten], and created a hostile work environment, until such time that [Wooten] was constructively discharged on or about May 1, 2011"; and (5) McDonald Transit's unlawful conduct caused Wooten harm, including damages in the form of lost wages and benefits, mental anguish, and non-economic damages.

We hold that these allegations, while perhaps less detailed than McDonald Transit would prefer, are nevertheless sufficient to satisfy the low threshold of Rule 8.  Wooten's complaint provides McDonald Transit with "fair notice" of his claim that McDonald Transit engaged in conduct prohibited by the ADEA—discrimination and retaliation—in response to the age-discrimination charge he filed with the EEOC. *See Twombly*, 550 U.S. at 555.  The allegations are a far cry from the sort of "unadorned, the-defendant-unlawfully-harmed-me accusation" decried in *Iqbal*.  *See* 556 U.S. at 678.

---

[3] Although most cases addressing Rule 8 arise in the context of a Rule 12(b)(6) motion to dismiss, we recognize that a defendant ordinarily must invoke Rule 12 in order to avail itself of that rule's protections.  *See* Fed. R. Civ. P. 12(b) ("[A] party may assert the following defenses by motion . . . .").  Accordingly, as a default is the product of a defendant's *inaction*, we decline to import Rule 12 standards into the default-judgment context.  *Cf. Iqbal*, 556 U.S. at 678 ("*To survive a motion to dismiss*, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (emphasis added) (quoting *Twombly*, 550 U.S. at 570)).

No. 13-11035

They indicate that Wooten worked for McDonald Transit for twelve years; he filed an EEOC charge accusing McDonald Transit of age discrimination during his eleventh year of employment; McDonald Transit took adverse actions against Wooten in retaliation for that charge; and within seven months Wooten found his work conditions so intolerable that he was constructively discharged.

Admittedly, Wooten's complaint could have specified the nature of the discrimination and the retaliation he experienced; but his allegations are not so vague that McDonald Transit lacked notice of the contours of Wooten's claim.   Indeed, as Wooten points out, the illustrative civil rules forms published with the Federal Rules of Civil Procedure provide even less factual detail than the complaint at issue here: Form 11, a sample complaint for negligence, alleges only that "[o]n *date*, at *place*, the defendant negligently drove a motor vehicle against the plaintiff" and "[a]s a result, the plaintiff was physically injured, lost wages or income, suffered physical and mental pain, and incurred medical expenses of $_____." Fed. R. Civ. P. app. Form 11.  The content of this form also undermines the premise that the complaint must explicitly include every element of the plaintiff's prima facie case to satisfy Rule 8; the form contains no reference to a legal duty or proximate cause, two elements of a prima facie case for negligence.  *See* Restatement (Third) of Torts: Liab. for Physical and Emotional Harm § 6 cmt. b (2009).  Rather, all elements of the cause of action are present by implication.  The same holds true here: Wooten's complaint alleges (1) a protected activity (filing an EEOC charge),[4] (2) adverse employment actions (discrimination, retaliation, and

---

[4] Filing a discrimination charge with the EEOC qualifies as a protected activity under the ADEA.  *See* 29 U.S.C. § 623(d).

11

No. 13-11035

creation of a hostile work environment),[5] (3) a causal link (the adverse actions commencing after Wooten filed the EEOC charge and occurring, at most, seven months later),[6] and (4) qualification (twelve years of continuous employment).[7]

Moreover, if McDonald Transit believed that Wooten's allegations were inadequate to support the requested relief or even to enable an intelligent response, it simply could have moved for a more definite statement or to dismiss the case for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6), (e).

In view of the above, we hold that Wooten's complaint is "well-pleaded" for default-judgment purposes. As such, we have little difficulty concluding

---

[5] To establish an adverse employment action, the plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (internal quotation marks omitted).

[6] In *Clark County School District v. Breeden*, 532 U.S. 268 (2001) (per curiam), the Supreme Court made clear that a narrow band of retaliation claims can establish causation by the "very close" temporal proximity alone. *See id.* at 273 (collecting cases fulfilling this requirement based on three- and four-month delays). *But see Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) ("*Breeden* makes clear that . . . temporal proximity alone, when very close, can in some instances establish a *prima facie* case of retaliation. But we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation." (citation omitted)).

[7] Although *Holtzclaw* made qualification for the job an additional requirement, it did not explain how to evaluate that requirement. *See* 255 F.3d at 260. Nevertheless, a review of our ADEA jurisprudence indicates that "qualified" has a broadly colloquial meaning in this context; it refers to objective job qualifications (e.g., training, experience, and physical capacity), not "essential functions" or any other term of art associated with the term's counterpart in the Americans with Disabilities Act. *See, e.g., Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349–50 (5th Cir. 2007) (concluding that the plaintiff had made out a prima facie case of ADEA discrimination by showing that he "possessed the same job qualifications when [his employer] terminated him as when [it] assigned him to [his last] position," as evidenced by the employee meeting "the objective criteria listed in a job posting" and holding a similar job title for two years); *cf. Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 & n.3 (5th Cir. 1988) (holding that "a plaintiff challenging his termination or demotion [under the ADEA] can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action" and explaining that "[b]y this we mean that plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired").

that the evidence received at the damages prove-up hearing served a permissible purpose under Rule 55(b)(2)—to "establish the truth of any allegation by evidence" or "investigate any other matter"—and we deem *Nishimatsu*'s complaint-supplementation hypothetical inapplicable, *see* 515 F.2d at 1206 n.5. Wooten's testimony simply added factual details that fleshed out his claim: for instance, his testimony that he had never been disciplined served as further proof of his qualification, and his testimony that he was demoted, given menial work, and denied opportunities for work-related certification for approximately six months after he filed his EEOC charge added specificity to the adverse-employment-action and causal-link elements of his case. Considering this evidence in addition to the allegations in Wooten's complaint, we see ample grounds for the entry of default judgment, and we hold that the district court did not abuse its discretion in entering that judgment.

## B.    The Refusal to Set Aside the Default Judgment

On appeal, McDonald Transit renews its arguments for setting aside the judgment under Federal Rule of Civil Procedure 60(b)(1) and (b)(6).[8] We address these arguments in turn.

### 1.    *Rule 60(b)(1) Grounds for Setting Aside the Judgment*

"In determining whether good cause exists to set aside a default judgment under Rule 60(b)(1) we examine the following factors: 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.'" *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008) (quoting *In re Dierschke*, 975

---

[8] McDonald Transit says that it maintains its objections to the district court's ruling on the grounds of fraud under Rule 60(b)(3) and lack of personal jurisdiction under Rule 60(b)(4), but it fails to argue these points in its brief. We therefore deem these arguments abandoned on appeal. *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993).

F.2d at 183); *accord In re Chinese-Manufactured Drywall Prods.*, 742 F.3d at 594. "A finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding.'" *Lacy*, 227 F.3d at 292 (quoting *In re Dierschke*, 975 F.2d at 184). The defendant has the burden of showing by a preponderance of the evidence that its neglect was excusable, rather than willful, *In re Chinese-Manufactured Drywall Prods.*, 742 F.3d at 594, and we review the district court's corresponding factual determination for clear error, *In re Dierschke*, 975 F.2d at 184.

Here, the district court concluded that McDonald Transit willfully defaulted. It reached this conclusion based on two facts: (1) Wooten properly executed service of process on McDonald Transit and (2) McDonald Transit offered no answer or other defense. McDonald Transit contends that the district court misapplied the standard for willfulness under Rule 60(b)(1). McDonald Transit cites *Jenkens & Gilchrist*, 542 F.3d at 123, for the proposition that "perfection of service is not determinative—the defendant's knowledge of the perfected service, and the defendant's actions post-service also play a role in measuring the willfulness of a defendant's default." By this standard, McDonald Transit argues, it presented post-service evidence that it did not default willfully.

We are unpersuaded. If McDonald Transit is to be believed, its failure to answer or defend even after supposedly proper process amounts to mere mistake or inadvertence. But the company offers no explanation for what happened between its presumed receipt of process and the date on which it retained counsel to try to vacate the default judgment. It only reasserts that service was not properly executed. Without any explanation from McDonald Transit, the company has encroached on the sort of behavior we have decried

as "'play[ing] games' with the court." *See In re Chinese-Manufactured Drywall Prods.*, 742 F.3d at 595 (holding that the foreign defendant willfully defaulted when it did not contest that it was served with the complaint and did not provide any explanation for its default even when pressed at oral argument); *In re Dierschke*, 975 F.2d at 183–84 (holding that the defendant willfully defaulted when he admitted that he had received the complaint, but explained that he had failed to respond because he was involved in another suit and did not understand that he was being served in a new case). All McDonald Transit can say is that it rushed to court as soon as it learned the district court had entered a default judgment against it. Yet this late-breaking diligence pales in comparison to the kind of post-service conduct that we have found to foreclose a finding of willfulness. *See, e.g.*, *Lacy*, 227 F.3d at 292–93 (holding that the defendant's default was not willful when its counsel "made repeated contacts with [the plaintiff] in an attempt to resolve the suit" and "made plain its intention not to agree to waiver of service and its belief that service therefore had not yet been effected"). Indeed, despite being served with process on two separate occasions nearly seven months apart, there is no evidence that McDonald Transit made any effort to resolve the matter before the entry of default judgment.

Accordingly, we hold that McDonald Transit has not borne its burden to show that its default was excusable, and we cannot say, on this record, that the district court's factual finding of willfulness was clearly erroneous.

### *2.     Rule 60(b)(6) Grounds for Setting Aside the Judgment*

Under Rule 60(b)(6), a court may vacate a judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Though a "grand reservoir of equitable power," we exercise this power sparingly, granting

No. 13-11035

relief only in "extraordinary circumstances." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 642 (5th Cir. 2005) (internal quotation marks omitted).

McDonald Transit attempts to flood this reservoir with points of error. It collects all of its other claims for relief and asserts that together they make it "inequitable" to impose a judgment awarding damages against it. This argument fails because a movant must show any reason justifying relief "*other than the more specific circumstances* set out in Rules 60(b)(1)–(5)." *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005) (emphasis added). All of McDonald Transit's claims are claims it has brought or is bringing under a different Rule 60(b) base. Therefore, we hold that McDonald Transit has failed to establish "extraordinary circumstances" justifying relief under Rule 60(b)(6), *Hesling*, 396 F.3d at 642, let alone an abuse of discretion in the district court's refusal to set aside the judgment, *Lacy*, 227 F.3d at 292.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.